UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN A. KELLY,<br>　　　　　　Plaintiff<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY,<br>as Trustee for Soundview Home Loan Trust 2006-OPT3,<br>Asset-Backed Certificates, Series 2006-OPT3, and<br>SAND CANYON CORPORATION, f/k/a  Option<br>One Mortgage Corporation,<br>　　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>)  Civil No. 11-10328-RGS<br>)<br>)<br>)<br>)<br>) |

**PLAINTFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff John A. Kelly submits this memorandum of law in opposition to the motion to dismiss filed by Deutsche Bank National Trust Company, Trustee.  For the reasons set forth herein, the motion must be denied in its entirety.

**Introduction**

Plaintiff is the owner of a single family home in Dracut, Massachusetts.  In December, 2005, plaintiff refinanced his mortgage with Option One Mortgage Corporation (now known as "Sand Canyon Corporation").  Complaint, ¶¶5 - 6.  Defendant Deutsche Bank, the purported current holder of the mortgage, has commenced action to foreclose the mortgage.  Complaint, ¶¶9 – 10.

Plaintiff alleges in count I of the complaint that Option One failed to provide him with two copies of his right to cancel the transaction as required by the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), G.L. c. 140D, *et seq.,* and that as a

result of this violation plaintiff continues to have the right to rescind under MCCCDA via recoupment as a defense to foreclosure. In count II of the complaint, plaintiff alleges that Deutsche Bank lacks authority to foreclose because under Massachusetts law it is not entitled to enforce the promissory note, and in count III alleges that Deutsche Bank lacks authority to foreclose because under Massachusetts law it is not an assignee of the mortgage.

## Argument

The central issue in adjudicating a motion to dismiss is whether the allegations "[are] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* ___U.S. ___, 129 S.Ct. 1937, 1950 (2009). In applying this standard in a case where delivery of required truth-in-lending disclosures is at issue, the Court must bear in mind that the creditor has the burden of proving adequate delivery. *See Wells Fargo Bank, N.A. v. Jaaskelainen,* 407 B.R. 449, 454 (D.Mass. 2009).

**I.   PLAINTIFF'S RESCISSION CLAIM ASSERTED DEFENSIVELY BY WAY OF RECOUPMENT IS NOT BARRED AS A MATTER OF LAW.**

**A.   Summary of MCCCDA's rescission provisions and procedures**

The MCCCDA was enacted in 1969, one year following passage of the federal Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.* The statutes were designed to guarantee "a meaningful disclosure of credit terms so that the consumer will be able to

compare more readily the various credit terms available to him and avoid the uninformed use of credit" 15 U.S.C. §1601(a)."[1]

MCCCDA, like its federal counterpart, reflects particular legislative concern with consumer credit transactions that result in a security interest on a borrower's principal residence. Thus, subject to certain exceptions not applicable here,[2] in such a transaction MCCCDA provides the borrower with the right to cancel the transaction and requires creditors to "provide, in accordance with regulations of the commissioner [of banks], appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." The pertinent regulation reads:

> Notice of Right to Rescind. In a transaction subject to rescission, *a creditor shall deliver two copies of the right to rescind to each consumer entitled to rescind*. The notice shall be on a separate document that identifies the transaction and conspicuously disclose the following:
> . . . . . . . . .

209 CMR 32.23(2)(a)(emphases added). Here, there has not been any dispute that the subject loan was a consumer credit transaction, that it resulted in a security interest on plaintiff's home, and that it was subject to MCCCDA's rescission provisions.[3]

The right to cancel may be exercised "until midnight of the third business day following consummation, delivery of [right to cancel notices], or delivery of all material

---

[1] Both MCCCDA and TILA apply only to "consumer credit transactions." A "consumer credit transaction" is an extension of credit where the obligor is an individual and credit is given primarily for personal, household, or family purposes. G.L. c. 140D, §1. In its motion, defendant has not contested that the Option One loan satisfied this definition.

[2] *See* G.L. c. 140D, §10(e).

[3] The Federal Reserve Board has exempted MCCCDA's rescission provisions from TILA; thus, where the creditor is not a federally-chartered institution, Massachusetts consumers only have rescission rights under MCCCDA. *See Myers v. Federal Home Loan Mortgage Co. (In re Myers),* 175 B.R. 122, 125 (Bankr.D.Mass. 1994) ("transactions subject to the Massachusetts Truth in Lending Act are exempt from chapters 2 and 4 of the Federal act, except with respect to certain creditors that are federally chartered institutions"); *Giza v. Amcap Mortgage, Inc.*, 428 B.R. 266, 272 n. 11 (Bankr.D.Mass. 2010)(TILA "inapplicable" to rescission claims brought by Massachusetts borrowers).

3

disclosures, whichever occurs last." 209 CMR 32.23(1)(c). While the right to rescind affirmatively expires "four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first"(G.L. c. 140D, §10(f)), MCCCDA provides that rescission may be accomplished at any time by way of recoupment as a defense to foreclosure: "nothing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth." G.L. c. 140D, §10(i)3).

Any person "whose ownership interest is or will be subject to the security interest" has the right to rescind (209 CMR 32.23(1)(a)), and one person's exercise of the right "shall be effective as to all." 209 CMR 32.23(1)(d). In addition, security interests held by assignees are subject to rescission to the same extent as the original creditor. G.L. c. 140D, §33(c).

**B. This Court may decide the issue raised by defendant if "reasonably clear" how the Supreme Judicial Court would rule.**

It is axiomatic that "[state courts] alone can define and interpret state law." *Schlesinger v. Councilman,* 420 U.S. 738, 755 (1975). Thus, a federal court "should be reluctant to construe state law when the state courts have not spoken directly to the issue at hand," *Event Producers, Inc. v. Tyser & Co.,* 854 F.Supp. 35, 38 (D.P.R 1993), but may do so "[where] the course the state court would take is reasonably clear." *Nieves v. Univ. of Puerty Rico,* 7 F.3d 270, 274-75 (1st Cir. 1993) (citations omitted). The recommended approach has been articulated as follows:

> "In the absence of a definitive ruling by the highest state court, a federal court may consider 'analogous decisions, consider dicta, scholarly works, and any other reliable data tending convincingly to how the highest court in the state would decide the issue at hand.'"

4

*Fischer v. Bar Harbor Banking & Trust Co.,* 857 F.2d 4, 7 (1st Cir. 1988), quoting *Michelin Tires, etc. v. First Nat'l Bank of Boston,* 666 F.2d 673, 682 (1st Cir. 1981).

There has been no reported decision from any Massachusetts state appellate court addressing whether rescission under MCCCDA may be exercised defensively via recoupment more than four years from the date of the transaction. Nonetheless, it is "reasonably clear" – indeed, it is all but certain - that based on the plain language of the statute and well-established federal precedents the Massachusetts Supreme Judicial Court would determine that plaintiff is entitled to rescind the Option One transaction defensively by way of recoupment. However, in the unlikely event this Court believes there is substantial doubt about such an outcome, certification of the issue to the SJC would be appropriate.[4]

### C. **MCCCDA rescission rights are not barred by the limitations period in G.L. c. 140D, §10(f).**

The seminal case of *Beach v. Ocwen Federal Bank,* 523 U.S. 410 (1998), was a lawsuit filed in 1992 to foreclose a mortgage obtained by the defendant homeowners in 1986. The homeowners asserted as an affirmative defense that they were entitled to rescind the transaction under TILA due to certain disclosure violations, but the trial court ruled this defense was barred by the language of 15 U.S.C. §1635(f) that rescission rights "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.,* at 413. Two Florida appellate courts affirmed, as did the United States Supreme Court. The Supreme Court ruled, simply, that

---

[4] Rule 1:03 of the Massachusetts Supreme Judicial Court provides for certification by this Court of issues of state law "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."

5

the plain language of §1635(f) indicated the right to rescind itself expired after three years, and therefore rescission could not even be asserted defensively after that time. The Court explained that while TILA contained an exception (in §1635(i)(3)) for rescinding defensively by way of recoupment under state law, Congress did not include such a "saving clause" with respect to federal law,[5] and thus concluded: "the Act permits no *federal* right to rescind, defensively or otherwise, after the 3-year period of §1635(f) has run." *Id.,* at 419 (emphasis supplied). The Court clarified: "[s]ince there is no claim before us that Florida law purports to provide any right to rescind defensively on the grounds relevant under the Act, we have no occasion to explore how state recoupment law might work when raised in a foreclosure proceeding outside the 3-year period." *Id.,* at 419, n. 6. Thus, *Beach* clearly did not address, or decide, whether Florida law (as opposed to federal common law) permitted the homeowners to rescind after three years by way of recoupment under TILA. Nor did *Beach* address, or decide, whether any Florida statute provided the homeowners with rescission rights which could be exercised beyond three years, either affirmatively or defensively.

MCCCDA is the very kind of state statutory scheme which *Beach* recognized could support rescission by way of recoupment. In crafting MCCCDA, the Massachusetts legislature explicitly made §10(f) subject to §10(i)(3), the language of which bears repeating: "*[n]othing* in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth." (emphasis supplied). Thus, for defendant to prevail the Court must find that §10(i)(3) is utterly superfluous, essentially that the Legislature included it for no reason whatsoever. It is

---

[5] A "saving clause" is "a statutory provision exempting from coverage something that would otherwise be included." *Black's Law Dictionary,* 8th ed.

axiomatic that "a statute must be construed so that 'effect is given to all its provisions, so that no part will be inoperative or superfluous.'" *Wheatley v. Mass. Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010), quoting *Bankers Life & Cas. Co. v. Comm'r of Ins.*, 427 Mass. 136, 140 (2010). *See Worcester Housing Authority v. Mass. Comm'n Against Discrimination*, 406 Mass. 244, 247 (1989)("no word of words used in a statute should be considered superfluous"). Moreover, a court's task is "[to] construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction." *DiFore v. American Airlines, Inc.*, 454 Mass. 486, 491 (2009). *See PGR Management Company, Inc. v. Credle*, 427 Mass. 636, 640 (1998)("We construe statutes to give reasonable effect to all the statutory provisions and create a consistent body of law."); *Campbell v. Contributory Retirement Appeal Bd.*, 17 Mass.App.Ct. 1018 (1984)("subsections must be read together as a harmonious whole.").

In view of these cardinal principles, the only construction of section 10 which gives effect to all its provisions and also avoids internal contradiction is that rescinding affirmatively must occur within "the time period provided in subsection (f)," but that rescinding defensively by way of recoupment may occur after that time. This is precisely the analysis which underlies the Court's opinion in *Fidler v. Central Coop. Ban (In re Fidler)*, 226 B.R. 734 (Bankr.D.Mass. 1998). There, the homeowners filed an adversary complaint seeking to rescind by way of recoupment a mortgage transaction they entered into nine years earlier. Initially, in a decision issued in 1997,[6] Judge Hillman denied the lender's summary judgment motion on the basis of section 10(i)(3). After *Beach* was handed down in 1998, the lender moved to dismiss on the basis that the Supreme Court's holding compelled a different outcome. However, Judge Hillman saw no basis for

---

[6] *Fidler v. Central Coop. Bank (In re Fidler),* 210 B.R. 411 (Bankr.D.Mass. 1997).

changing his prior ruling, and in fact concluded that *Beach* supported that ruling. First noting that the Supreme Court specifically did not address "how state recoupment law might work when raised in a foreclosure proceeding outside the 3-year period" (*id.,* at 737, quoting *Beach,* 523 U.S. at 419, n. 6), the judge explained that "[w]hile CCCDA §10 closely parallels its federal counterpart, §1635, the two sections are not identical" due to the saving clause of §10(i)(3). Given the plain language of §10(i)(3), the Court concluded: "the Massachusetts Legislature has essentially ended any debate over the meaning of the limitations period in ch. 140D, §10(f). However else it may be construed, one thing is for certain: ch. 140D, §10(f) does not affect the Fidlers' right of recoupment." *Id.*

In 2002, the Bankruptcy Court revisited the issue in *Maxwell v. Fairbanks Capital Corp. (In re Maxwell),* 281 B.R. 101 (Bankr.D.Mass. 2002). In that case, Judge Feeney reviewed Judge Hillman's second *Fidler* opinion and concluded: "This Court agrees with Judge Hillman's analysis in *Fidler.* The Debtor's rescission claim is not barred by the expiration of the four year statute of limitations set forth in the MCCCDA." *Id.,* at 124.[7]

Defendant does not address the holdings of *Fidler* or *Maxwell,* much less explain why it believes these cases does not apply or were decided incorrectly, and does not proffer any authority to the contrary. Moreover, these decisions are reinforced by the fact that Massachusetts has "[a] strong commitment to consumer protection legislation." *Feeney v. Dell, Inc.,* 454 Mass. 192, 205 (2009). Consistent with this tradition, the SJC liberally construes MCCCDA and applies it as a strict liability statute. *See,* e.g., *Shepard*

---

[7] Recently, an Illinois appellate court also concluded that Judge Hillman's reasoning in *Fidler* was sound, declaring: "[t]he court followed the CCCDA's *clear statutory mandate* and granted the debtors the common law right of recoupment." *Wells Fargo Bank, N.A. v. Terry,* 401 Ill.App.3d 18, 22, 928 N.E.2d 540, 545 (Ill.App. 2010)(emphases supplied).

*v. Finance Assoc. of Auburn, Inc.,* 366 Mass. 182 (1974)(MCCCDA "[is] quite clearly a consumer protection statute [which] is to be liberally construed to effectuate its remedial purpose"); *Mayo v. Key Financial Services, Inc.,* 424 Mass. 862, 865 (1997)("[s]trict compliance is the statutory mandate").  Thus, even if there were some ambiguity in the statute regarding the availability of recoupment under these circumstances – which there is not – it should be resolved in plaintiff's favor.

Accordingly, it is reasonably clear that plaintiff's rescission claim is not barred by the limitations period of G.L. c. 140, §10(f).

D. **Recoupment is an available remedy under Massachusetts law when property interests are put at risk through non-judicial action.**

Defendant also posits that even if MCCCDA permits rescission after four years by way of recoupment, such a construction is essentially meaningless here because plaintiff is asserting his rescission claim "affirmatively."  *See* Def. Mem., pp. 7-8.  Defendant is incorrect.

Recoupment is a common law concept, characterized as a defensive claim "arising out of the transaction that formed the basis of the plaintiff's claim."  *Bose Corp. v. Consumers Union of United States, Inc.,* 367 Mass. 424, 427 (1975).  Traditionally, a claim sounding in recoupment was limited to offsetting recovery awarded to plaintiff, and "was generally if not always timely, no matter when actually pleaded in the action, if the plaintiff's claim was timely."  *Id.  See Fidler,* 226 B.R. at 737, quoting *United Structures of America, Inc. v. G.R.G. Eng., S.E.,* 9 F.3d 996, 998 (1st Cir. 1993)("The common law doctrine of recoupment is a well-established method of reducing 'part of the plaintiff's claim because of a right in the defendant arising out of the same transaction.'").  The "compulsory counterclaim" concept formalized by the adoption of the Massachusetts

9

Rules of Civil Procedure in 1974 supplanted recoupment in the context of civil litigation; as codified in G.L. c. 260, §36, "a counterclaim arising out of the same transactions or occurrence that is the subject matter of the plaintiff's claim, to the extent of the plaintiff's claim, may be asserted without regard to the provisions of law relative to limitations of action." It has been recognized that a compulsory counterclaim "'corresponds to recoupment in pre-Rules practice.'" *Howell v. Birnberg*, 1994 WL 879659 (Mass.Super. Feb. 10, 1994), *4, citing *Bernstein v. Grammercy Mills, Inc.,* 16 Mass.App.Ct. 403, 409 (1983).

However, there is no basis for contending that the Rules completely obliterated the remedy of recoupment in the Commonwealth, which defendant's argument presupposes. In Massachusetts, mortgage foreclosure was designed to bypass the judicial system through a device known as the "statutory power of sale," codified in G.L. c. 244, §14, which allows a mortgagee to "without action" take all steps "authorized or required by the power." Thus, Massachusetts is often described as a "non-judicial" or "extra-judicial" foreclosure state. While chapter 244 authorizes foreclosure to be accomplished in other ways – for example, by entry and possession and by judicial action[8] - it is almost always accomplished privately, as defendant is attempting here.[9] Consequently, in the normal course of events there is no judicial or other proceeding in which a homeowner with rescission rights can assert a counterclaim. Rather, the homeowner must institute litigation by filing a complaint with an appropriate court. If still within the time period of

---

[8] *See Santiago ex rel. Santiago v. Alba Management, Inc.,* 77 Mass.App.Ct. 46, 49-50 (2010).

[9] The existence of the Land Court procedure for adjudicating potential claims under the Servicemembers Civil Relief Act does not alter this reality. The Act "has a limited scope and purpose and does not permit litigation of broader issues involving the relationship between borrower and lender." *Randle v. GMAC Mortg., LLC,* 2010 WL 3984714*6, quoting *Beaton v. Land Court,* 367 Mass. 385, 387-388 (1975).

subsection (f), the complaint can set forth an affirmative claim for rescission (as well as other relief which may be warranted). If outside the time period of subsection (f), the complaint can set forth a claim for rescission sounding in recoupment, as subsection (i)(3) and the *Fidler* and *Maxwell* decisions make clear. Thus, defendant's far too simplistic (and self-serving) analysis does not withstand scrutiny and, not surprisingly, all the cases on which defendant relies are completely inapposite.[10] Finally, it must not be overlooked that subsection (i)(3) was added to MCCCDA in 1996, more than 20 years after the Massachusetts Rules of Civil Procedure went into effect. Clearly, the Legislature would not have specifically provided for relief via recoupment under MCCCDA had it believed to any degree that this was an obsolete remedy.

Accordingly, count I of the complaint is not subject to dismissal.[11]

## II. COUNTS II AND III STATE VALID CLAIMS FOR RELIEF THAT DEFENDANT LACKS STANDING TO FORECLOSE.

In attacking counts II and III of the complaint, defendant states as follows:

> The Plaintiff in this case does not have standing to dispute the Trust's foreclosure power under the terms of the Pooling and Servicing Agreement ("PSA") governing the Soundview Home Loan Trust, because he was not a party to this agreement nor was he an intended third-party beneficiary. The Plaintiff's complaint seeks to enforce the terms of the PSA without any allegation that the plaintiff is a party to or a third-party beneficiary of this agreement.

---

[10] In all three cases - *Kozorezov v. Bank of America, N.A.,* 2010 WL 5300561 (W.D.Wash. Dec. 17, 2010), *Sherk v. Countrywide Home Loans, Inc.,* 2009 WL 2412750 (E.D.Pa. Aug. 5, 2009), and *Lee v. GMAC Mortgage, LLC,* 2010 WL 4812747 (D. Hawaii Nov. 18, 2010), the courts held simply that a claim for damages could not be asserted via recoupment under TILA. Here, by contrast, plaintiff is seeking rescission (and not damages) via recoupment, which MCCCDA expressly permits.

[11] It should be noted that all of the relief which plaintiff is seeking in count I is specifically provided for by MCCCDA and is essential to restoring the pre-transaction status quo, with the possible exception of an award of costs and attorney's fees. However, defendant has not raised any argument specific to this issue.

11

Def.Mem., pp. 10-11. Defendant's challenge rests on a fundamental misunderstanding of plaintiff's claims. As even a cursory reading of the complaint should make plain, plaintiff is not attempting to enforce the PSA and is not asserting any rights which he allegedly has under the PSA, whether as a third-party beneficiary or otherwise.

### A.  Count II

In count II of the complaint, plaintiff alleges simply that defendant lacks authority to foreclose because it is not the holder of the underlying promissory note or a transferee of the note with the rights of a holder (Complaint, §15). Thus, the claim only presents issues arising under Massachusetts law. Defendant has not presented any argument or authority challenging the sufficiency of plaintiff's allegations, and on this basis alone the motion must be denied as to count II. However, even if defendant had done so, its motion would fail.

It is axiomatic that a mortgagee may not foreclose unless it is entitled to enforce the promissory note which the mortgage secures:

> A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust. When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured.

*In re Mitchell,* 2009 WL 1044368 *4 (Bankr.D.Nev. Aug. 19, 2008), quoting *Restatement (Third) of Property (Mortgages),* §5.4, Comment A (1997). A foreclosing entity, therefore, "must establish there has been a sufficient transfer of both the note and deed of trust," and "[w]here the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." *Id.,* quoting 4 Richard R Powell, *Powell on Real Property,* §37.27[2](2000). As another court has explained:

12

> The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust..

*Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.23d 619, 623 (Mo.App. 2009). *See, also, Saxon Mortgage Services, Inc. v. Nillery,* 2008 WL 5170180 (N.D. Cal 2008)("for there to be a valid assignment, there must be more than just assignment of the deed [of trust] alone; the note must also be assigned"); *Landmark Nat'l Bank v. Kesler,* 289 Kan. 528, 540 (2009)("in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable."); *In re Wells,* 407 B.R. 873, 880 (Bankr.N.D.Ohio 2009)(assignment "did not transfer the right to enforce the note to U.S. Bank . . . the note must be negotiated in accord with Ohio's version of the Uniform Commercial Code").

Since the note is a negotiable instrument governed by Article 3 of the Uniform Commercial Code, codified in Massachusetts at Chapter 106 of the General Laws, it may only be enforced by "the holder of the instrument" or "a nonholder in possession of the instrument who has the rights of a holder." G.L.c. 106, §3-301.[12]  A "holder" is "the person in possession if the instrument is payable to bearer, or in the case of an instrument payable to an identified person, if the identified person is in possession." G.L. c. 106, §1-201(20).   In addition to proving it meets one of these two tests, defendant must also demonstrate that it possesses the original note as required by G.L. c. 106, §3-301(ii). *See*

---

[12] A third scenario for enforcement is not arguably applicable here: "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or subsection (d) of section 3-418."

13

*Marks v. Braunstein,* ___ B.R.___, 2010 WL 362211 (D.Mass. Sept. 14, 2010); *In re Samuels,* 415 B.R. 8, 20 (Bankr.D.Mass. 2009)(assignee of mortgage could foreclose and was therefore entitled to relief from stay because it possessed original note endorsed in blank).[13]

Accordingly, defendant's motion must be denied as to count II of the complaint.

### B. Count III

In count III of the complaint, plaintiff alleges that defendant did not acquire the note and/or mortgage in accordance with the terms of the PSA and therefore may not foreclose under Massachusetts law. As the complaint reads: "neither the promissory note or mortgage were conveyed to Deutsche Bank in conformity with the Pooling and Servicing Agreement governing the Soundview Home Loan Trust . . . accordingly, Deutsche Bank lacks standing and authority to enforce the promissory note or to foreclose the mortgage." Complaint, §17. Defendant does not challenge the sufficiency of these allegations, asserting instead that plaintiff lacks standing "to dispute the Trust's foreclosure power under the terms of the [PSA]." Def.Mem., p. 10. However, as the complaint makes clear, plaintiff is not challenging the Trust's powers under the PSA, but rather its authority to foreclose under Massachusetts law.

It is axiomatic that in order to exercise the statutory power of sale contained in a mortgage, a person or entity which is not the original mortgagee must be a valid assignee. *See* G.L. c. 183, §21 (statutory power of sale can be exercised by "the mortgagee or his executors, administrators, successors or assigns"). As the Supreme Judicial Court recently confirmed: "[the foreclosing banks] had the authority to exercise the power of

---

[13] It is axiomatic that an assignment of the mortgage alone does not transfer ownership of the note. In

sale . . . *only if they were the assignees of the mortgages at the time of the notice of sale and the subsequent foreclosure sale."* U.S. Bank Nat. Ass'n. v. Ibanez, 458 Mass. 637, 648 (2011)(emphases supplied).

In *Ibanez,* the Court addressed the foreclosures of two securitized mortgages. One of the purported assignees, U.S. Bank, foreclosed a mortgage given by Ibanez, and the second purported assignee, Wells Fargo, foreclosed a mortgage given by LaRace. With respect to the Ibanez mortgage, the Court upheld the Land Court's findings that there were multiple instances of non-compliance with the "private placement memorandum" ("PPM") and that as a result the original mortgagee in fact "was [still] the mortgage holder at the time of the foreclosure." *Id.,* at 650. With respect to the LaRace mortgage, the Court also determined that the original mortgagee continued to hold the loan because the mortgage was inadequately identified in the PSA and no evidence was presented to the Land Court that "[the] depositor held the LaRace mortgage that it was purportedly assigning in the PSA." *Id.,* at 651. The Court went on to caution:

> Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. However, there must be proof that the assignment was made by a party that itself held the mortgage. . . The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale . . .

*Id.*

Given the requirements of the Massachusetts power of sale and the Massachusetts foreclosure statutes, as well as the teaching of *Ibanez,* it is self-evident that plaintiff does

not lack "standing" to assert count III. For the same reasons, the cases cited by defendant involving very different facts and decided under the laws of other jurisdictions are completely inapposite. For example, in *Bridge v. Aames Capital Corp.,* 2010 WL 3834059 *2 (N.D.Ohio Sept. 29, 2010), the homeowner did not contest the bank's right to foreclose under Ohio law, but rather only sought a declaratory judgment that a particular mortgage assignment was invalid. Moreover, the Court found the argument made by defendant here to be irrelevant, declaring: "neither Article III standing requirements nor the prudential limitations are called into question in this case." *Id.,* at *2. Similarly, in *Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings LLC,* 717 F.Supp.2d 724 (E.D.Mich. 2010), the issue presented was again the validity of particular assignments, not whether – as is the question here - defendant met state law requirements for conducting a lawful foreclosure. The fundamental difference between the issues presented in these cases and those which arise in Massachusetts was highlighted by the concurring opinion in *Ibanez:*

> Foreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it. As the opinion of the court notes, such strict compliance is necessary because Massachusetts both is a title theory state and allows for extrajudicial foreclosure.

458 Mass. at 655 (Cordy, J., concurring).

Accordingly, defendant's motion to dismiss count III of the complaint lacks merit and must be denied.

**Conclusion**

For all the above reasons, the Court should deny defendant's motion to dismiss in its entirety.

                                        Plaintiff, by his attorney:

                                        */s/Kenneth D. Quat*
                                        BBO #408640
                                        QUAT LAW OFFICES
                                        678 Massachusetts Avenue, Suite 702
                                        Cambridge MA 02139
                                        (617) 492-0522
                                        ken@quatlaw.com

**Certificate of Service**

The undersigned certifies that on April 15, 2011, the foregoing document was served via the Court's ECF system on all registered participants, and via first class mail, postage prepaid, on all non-registered parties.

                                                                    */s/Kenneth D. Quat*